ADELE ROSENBAUM, GUARDIAN, *v.* MOSES ROSENBAUM ET AL.

PARTNERSHIP. *Dissolution. Contract. Construction.*

A contract between a retiring partner and his co-partners by which they agree to pay him the balance of a designated sum of money not required to satisfy certain firm debts which they might be "compelled to pay," and in which they agree "to make any defense that can be made" to said debts, does not forbid payment by the co-partners of said firm debts without suit, but leaves them free to pay what they were legally bound to pay and charge the retiring partner accordingly.

FROM the circuit court of Lauderdale county.

HON. GUION Q. HALL, Judge.

Adele Rosenbaum, guardian, appellant, was plaintiff in the court below; Moses Rosenbaum and another, appellees, were defendants there. From a judgment in defendants' favor plaintiff appealed to the supreme court.

Louis, Moses, and A. D. Rosenbaum were doing business in Meridian, Miss., as partners under the firm name of D. Rosenbaum's Sons. In 1893 Louis Rosenbaum was adjudged insane, and a guardian was appointed for his property. In August, 1894, the guardian of Louis Rosenbaum sold to Moses and A. D. Rosenbaum his interest in the business. The price agreed on for his interest was $3,000; $2,000 cash, and the remaining $1,000 was left in the hands of Moses and A. D. Rosenbaum to secure the payment of Louis Rosenbaum's part of certain specified debts. This contract was ratified by the chancery court. The agreement as to the $1,000 was as follows: "As to the remaining $1,000, whereas, the said firm has executed to R. Kahn its note for $3,000, against which note said firm claims setoff; . . . and whereas, the Meridian National Bank holds the note of said firm for $1,500; . . . and whereas, the said firm is indebted to the said bank in another note of about $200, and to the First National Bank in the sum of about $275: Now it is agreed that the party of the second part's (that is, the guardian of Louis) said $1,000 balance of purchase money aforesaid shall be held by said parties of the first part (*i. e.*, Moses and A. D. Rosenbaum), to be applied to his one-third of whatever sums of money the said parties of the first part may be compelled to pay on said debts to said banks and to said Kahn, above specified, and when said debts be settled, if all of said party of the second part's shall be $1,000 shall not be necessary to pay his one-third of said debts, then the party of the second part shall be paid by the parties of the first part the excess of said $1,000 remaining in the hands of the said parties of the first part after payment of the party of the second part's said one-third of said debts to said banks and the

said Kahn. The said parties of the first part agree to make any defenses that can be made to said debts." Adele Rosenbaum, guardian of Louis Rosenbaum, no part of this $1,000 having been paid, brought this suit against Moses and A. D. Rosenbaum, alleging in her declaration that no part of the $1,000 had been paid out under compulsion on any of the debts referred to in the agreement. To this declaration defendants pleaded the general issue, and gave notice thereunder that they would prove that they had paid certain sums of money on the debts referred to aggregating over $3,000, and that one-third of that amount was chargeable to plaintiff in extinguishment of plaintiff's claim. Upon this issue there was trial before a jury, which resulted in a verdict and judgment for defendants.

*Fewell & Son,* for appellant.

On the side of the appellant we have the solemn recital of the contract that the firm claimed offsets for more than sufficient to cover the amount appearing to be due to Mrs. Kahn's estate. This, we think, is to be considered a representation that some such offsets existed at the date of the contract, for the lunatic or his guardian could have had no knowledge as to such offsets; either that, or the latter was made to believe that such offsets actually existed. Such statements may well be considered to be an estoppel on appellees to deny wholly the then existence of such offsets, as the guardian must have acted on such representations. The statement of the contract is "against which note (of Mrs. Kahn) said firm claims offsets amounting to more than the amount appearing by said note to be due, but said firm apprehends some difficulty of making such setoffs good to the full amount of said note."

Now we ask the court to consider this question. Can the appellees be heard to deny that at that date, the date of the contract, there were offsets to the notes referred to? Can they say they were mistaken as to anything being then in existence by

way of offsets to the Kahn note? They inferentially said there is no doubt we have offsets which will to some amount be good against this note. Will they be permitted to say that they then perpetrated a fraud, imposed a falsehood and a misrepresentation on the guardian of the lunatic? Obviously the guardian believed and acted on such representation; he made the contract on the faith of the genuineness of the claim of offset. The amount of the money left in the appellees' hands indicates that the parties acted on the supposition that there would be established some amount of offsets, for $1,000 would not otherwise cover one-third of the contingent liabilities mentioned in the contract.

*A. S. Bozeman,* for appellees.

The case was fairly submitted to the jury on the instructions of the court and there is no error in the granting of any instructions to defendants, or in modifying or refusing any instructions asked by the plaintiff. *Abbott* v. *Keith,* 11 Vt., 525, 528; *Green* v. *Disbrow,* 79 N. Y. 1, 9; *Burbank* v. *Slinkard,* 53 Ind., 495; *Ligonier* v. *Ackerman,* 46 Ind., 552; *Green* v. *Irving,* 54 Miss., 450, 454.

WHITFIELD, C. J., delivered the opinion of the court.

The chief point of contention between the parties to this suit is the proper construction of the following clauses in the contract: "Now, it is agreed that the party of the second part's said $1,000 balance of the purchase money aforesaid shall be held by said parties of the first part to be applied to one-third of whatever sums of money the said parties of the said first part may be compelled to pay on said debts to said banks and said Kahn, above specified, if all of said party of the second part's said $1,000 shall not be necessary to pay his one-third of said debts, then the party of the second part shall be paid by the parties of the first part, the excess of the said $1,000 remaining

in the hands of the said parties of the first part after payment of said banks and said R. Kahn. The said parties of the first part agree to make any defenses that can be made to said debts," etc. It will be observed that the debts being dealt with are not only the debts to the said banks, but also the debts to said R. Kahn. We think it was not intended by the terms of this contract, "compelled to pay," "to make any defense that can be made," construed in the light of the provisions of the contract we have quoted, and of all the other provisions of the contract, to require the defendants to pay only such claims as final judgment had been rendered for. The contention of counsel for appellant, if correct, when followed to its logical consequences, must mean that what the contract meant by "compelled to pay" was not that defendant should pay only after being sued, but only when final judgment should have been rendered. For mere suit would finally determine nothing; nor would the judgment of an inferior court; so that, upon this view, the defendants might be required not only to wait until they are sued, but to wait until after all trials, which might include appeals and reversals, and until final judgment should have been rendered in each case. This is a wholly impracticable construction, in view of the language of the whole contract and its evident purpose. What the defendants were legally bound to pay is what the contract meant, in our judgment. The other view imposes too great a burden upon defendants. Besides, it makes the execution of the contract practically impossible. The delays and the costs incident to the other view are quite as unfavorable to the appellant as to the appellee in any practical working out of the contract.

With this construction established, we cannot, in the light of the evidence, as maifestly viewed by the jury, find any ground for reversal. The facts were for the jury, and their verdict must be given its full weight as to what those facts establish. We cannot say that it is clearly wrong. And as to the criti-

cism made of the instructions, they become unavailing when the contract receives the construction we have given it, and the verdict is given its true weight as to what the evidence does establish.

*Affirmed.*